## Potomac Insurance Company v. Grace H. Armstrong, et al.

### Same v. Anita Marie Armstrong, By, etc.

(Decided December 19, 1924.)

### Appeals from Boyle Circuit Court.

1. Principal and Agent—Installation of Telephone in Business Office Creates Presumption of Invitation to do Business by Means Thereof—Not Necessary to Show Identity of Person Answering Telephone to Establsh His Agency.—Where individual or corporation engaged in business installs telephone in its office, presumption is that it invites person to do business over telephone, and that at all times during business hours some person authorized to transact its business will answer telephone, and it is not incumbent on party to establish identity of person with whom he talked, in order to bind such individual or corporation.

2. Principal and Agent—Facts Held Not to Show Motor Company Removing Salvage of Automobile Acted as Insurer's Special Agent.—Where motor company, having no interest in salvage of automobile, notified insurer over telephone that there was some salvage, and person answering telephone merely stated that salvage ought to be protected, motor company, in absence of previous business relations with insurance company, was not thereby created

special agent to remove salvage, so as to make insurance company liable for its negligence.

JOHN W. RAWLINGS and C. R. DINWIDDIE for appellant.

C. C. BAGBY and CLARENCE WOOD for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing each judgment.

Appellee, Mrs. Grace Armstrong, while driving along the highway, was thrown from her buggy and injured, as was her infant child, the appellee Anita Marie Armstrong, who was at the time in the buggy with her.

In these two suits for damages they allege in substance that defendant negligently left upon the side of the highway a portion of an automobile which had burned, and that while the plaintiffs were driving along the pike in a buggy drawn by a horse, which was reasonably gentle and suitable for such travel, the horse became frightened at said automobile or portion thereof so left by defendant upon the highway, and the horse began to run whereby the buggy was overturned and the two plaintiffs injured.

The answer puts in issue all the allegations of the two petitions including the ownership by defendant of the salvage, or that it removed or caused to be removed any part thereof. The pleadings likewise raised the question of title to the salvage, it appearing appellant had previously issued an insurance policy covering the machine which was in force at the time it burned.

The facts are that appellant issued a policy on the machine of one Cox, and that when it burned Cox left the salvage on side of the road. The agent of appellant who had been instrumental in issuing the policy to Cox had formerly been an officer or employee of the Danville Motor Company, and while so engaged he kept his insurance office at the office of that company. So after the machine was burned Cox or his wife called up the Danville Motor Company to notify the agent of the destruction of the machine, although that person had ceased at that time to be agent of appellant.

However, some officer or employee of the Danville Motor Company called up the Potomac Insurance Company's office at Louisville and notified some one there of the destruction of the machine, and it is out of this con-

versation over the phone that it is claimed the Danville Motor Company, which actually removed the salvage and left what was left of it on the highway, was created the agent of the Potomac Insurance Company for that purpose. The liability of appellant, if any, grows out of its creation of the Danville Motor Company its agent to remove the salvage, for it is not contended that any officer or agent of appellant had anything to do with its removal or left any part of the salvage upon the highway.

It is not claimed by the officer or employee of the Danville Motor Company that in this conversation he recognized the voice of any one at appellant's office, or that he was given the name of any official of that company with whom he was talking.

The first contention of appellant is that it not appearing any official of appellant, or any one in authority, held this conversation it was incompetent to create the relationship of agency so as to bind appellant. But the call over the phone was for appellant's place of business in Louisville, and it is not denied there was a phone there, and there is no adequate denial that some one in appellant's office at Louisville talked to the official or employee of the Danville Motor Company at Danville, although as stated the voice of no one is claimed to have been recognized, nor is there anything to show the identity of the person at appellant's office with whom the conversation was had. Appellant was engaged in the insurance business and maintained its general office at Louisville, and presumably at all times during business hours had persons in that office to transact its business. It had issued a policy of insurance upon the Cox automobile, and whether after the burning of that car the title to the salvage under the terms of the policy vested in appellant or not, still it was interested in the preservation of the salvage to the extent that such preservation might diminish its liability.

The contention that this conversation was incompetent and does not bind appellant because of the failure to show that some one having authority to bind it was speaking for it cannot be maintained. The law is not only a practical but a progressive science, and takes cognizance of the modern methods of communication and the means used therefor. When an individual or cor-

poration engaged in a particular line of business installs in its office a telephone whereby it may be connected through the telephone system with a large number of people, presumably it invites them to do business with it through that means of communication, and presumably it thereby advertises to the business world that it at all times has in its office during business hours some person to communicate with others as to its particular line of business, and deal with them through that method of communication. It would in many instances hamper the transaction of its business and cast suspicion upon the validity of the agreements made from its office over the telephone if it was incumbent upon the other party to establish the identity of the person to whom he talked, and his authority to represent the corporation or individual. On the contrary the fair presumption is that such individual or corporation has always at its office somebody authorized to speak for it in the transaction of its particular line of business. Under modern conditions a very large proportion of the transactions of life occur over the telephone, and in the absence of special circumstances it would be a reflection upon the business integrity of a firm or corporation to say that it had in its office persons who might answer the phone in the transaction of its business, and yet not be bound by the conversation had on its business by such person. Out of this modern method of doing business has grown a modification, to the extent indicated, of the general rule that one dealing with one professing to be the agent of another does so at his peril, and must not only establish the agency before holding the principal liable, but must establish the extent of such agency; when however he has advertised the nature of his business and the location of his office, and connects that office with a telephone system whereby the public is invited to do business with him over the phone, then the presumption is there is some one in his office to answer that phone and speak for him.

The principle is well stated in 22 C. J., p. 193, where a number of authorities are cited in support of the text.

But in this case, although the evidence of the conversation supposed to create the agency was competent, it fails to establish any such agency so as to bind appellant by the acts of negligence, if any, of the Danville Motor Company. The man at the Danville end states that after that company received notice from Cox of the

destruction of the machine, he put in a call for the Potomac Insurance Company's office at Louisville and talked to some one there whose voice he did not recognize, and whose identity was not disclosed in the conversation. He says he told that person that an automobile upon which the Insurance Company had a policy of insurance, and which policy he then had in his possession, had been burned, and that the wreck was on the public highway some miles from Danville, and there was some salvage that should be protected, whereupon the person at the other end said that the salvage ought to be taken care of, and witness then said we will have it in our garage when your adjuster comes, and that the party at Louisville then again said the salvage ought to be protected, and that they would have the loss adjusted in a few days.

After this plaintiff's counsel asked the witness:

"Q. Well he said to go ahead then? A. No, he said he would have it adjusted."

There is no contention that this conversation created the Danville Motor Company the general agent of appellant, but that it created it a special agent for a particular purpose. A special agency may be created in express terms, or from the facts and circumstances surrounding the parties at the time, and their former relationship; that is, such facts and circumstances and relationship may be such as that an agency will be implied from them.

The words used clearly fall short of creating an express agency for a particular purpose, and we have been unable to gather from the record any such facts or circumstances, or former relationship between the parties as will justify any fair implication of its creation. The Danville Motor Company admittedly had no interest in the protection of the salvage, but being in possession of the policy of insurance which probably had been left in its possession by the former agent of appellant, it assumed to notify appellant over the phone of the loss, and of the fact there was some salvage, but succeeded only in getting an expression from appellant that the salvage ought to be protected, but did not get from it any authority to remove the salvage or preserve it. The only former connection disclosed by the record between appellant and the Danville Motor Company was that one of the Motor Company's employees or officials had formerly

been an agent of appellant, but no former business relationship is shown to have existed from which it might be implied that appellant expected the Motor Company to protect or preserve the salvage. From aught that may be discerned from the record or from the circumstances, it may have been appellant's purpose to send another to the scene and have the salvage protected, and there is nothing in this conversation inconsistent with such purpose; or it may have had in that locality some business associate to whom it preferred to intrust the preservation of the salvage, and there is nothing in this conversation inconsistent with that view.

We are of opinion therefore that neither this conversation nor the facts and circumstances surrounding it, taken in connection with the conversation itself, created the Danville Motor Company by implication the agent of appellant to remove this salvage; and as the claim of the two plaintiffs rests wholly upon the existence of such agency, the directed verdict for defendant in each case should have been given. 31 Cyc., title "Principal and Agent," pp. 1217 and 1218; Fidelity Trust and Safety Vault Company v. Carr, 24 R. 156.

The appeal is granted as to Grace Armstrong, and the judgments are each reversed with direction to grant appellant a new trial and for further proceedings consistent herewith.